CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

REBECCA A. PERLMUTTER
GREGG PARIS YATES
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Emails: Rebecca.Perlmutter@usdoj.gov
Gregg.Yates@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
May 4, 2022, 3:49 pm
Pam Hartman Beyer, Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 22-00034 DKW |
| Plaintiff, | INFORMATION |
| vs. | [18 U.S.C. § 1343] |
| CAREY MILLS, | |
| Defendant. | |

## INFORMATION

The United States Attorney charges:

<u>Wire Fraud</u>
(18 U.S.C. § 1343)

THE COVID-19 PANDEMIC PPP & EIDL LOAN PROGRAMS

On March 13, 2020, the President of the United States declared that the Coronavirus Disease 2019 ("COVID-19") pandemic was an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207. Shortly afterward, on March 25, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security (the "CARES") Act, which was signed into law on March 27, 2020. The CARES Act provided emergency funds that included financial assistance to individuals and businesses suffering the economic effects caused by the COVID-19 pandemic.

The United States Small Business Administration (the "SBA") was an executive-branch agency of the United States government directed to administer certain CARES Act funds to small businesses in need of financial assistance.

<u>The Paycheck Protection Program ("PPP")</u>

One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses through the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

To obtain a PPP loan, a qualifying business had to submit an application signed by an authorized representative of the business. The PPP loan application

2

required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) had to accurately and truthfully state, among other things, its average monthly payroll expenses and number of employees. This information was used to calculate the amount of money the business was eligible to receive under the PPP. In addition, the business had to provide accurate and truthful supporting documentation showing payroll expenses, such as the business's filed United States Internal Revenue Service ("IRS") Forms 941 (Employer's Quarterly Federal tax returns). Forms 941 reported employee wages and tax withholding amounts.

A PPP loan application was processed by a participating lender, such as a financial institution. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

The PPP loan proceeds could only be used by the business on certain permissible business expenses, such as payroll costs, interest on mortgages, rent, and utilities.

Economic Injury Disaster Loans ("EIDLs")

Economic Injury Disaster Loans ("EIDLs") provided low-interest financing to small businesses, renters, and homeowners in regions affected in certain declared disasters. The CARES Act authorized the SBA to provide EIDL funds, in the form of both loans and grants, to eligible small businesses that had experienced substantial financial disruptions due to the COVID-19 pandemic.

To obtain EIDL funds, a qualifying business had to submit an application directly to the SBA and provide accurate and truthful information regarding business ownership and operations, such as the number of employees, gross revenue for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant also had to certify that all the information in the application was true and correct. For a qualifying business, the application information and supporting documentation was used to determine the amount of EIDL funds the SBA would make available to the business.

CARES Act EIDL funds could only be used as working capital to alleviate economic injury caused by the COVID-19 pandemic. Permitted business expenses included payroll, production costs, and business obligations, such as fixed debts, mortgage, lease, or rent payments.

## THE SCHEME TO DEFRAUD

From an earlier date unknown, but by in or around May 2020 to August 2020 and thereafter, within the District of Hawaii and elsewhere, CAREY MILLS, the defendant, a resident of the Island of Hawaii, did knowingly devise and intend to devise a scheme and artifice to defraud, that is to deceive and cheat, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, well knowing at the time that such pretenses, representations, and promises would be and were false when made.

As part of the scheme to defraud:

MILLS knowingly and intentionally engaged in a scheme to obtain federally guaranteed funds through the PPP and EIDL loan programs, which funds MILLS knew he and several businesses were not entitled to receive. As part of this scheme, MILLS took various steps to submit electronic applications for PPP and EIDL small business loans. The applications included materially false and fraudulent representations and information that MILLS knew to be false and fraudulent at the time he submitted the applications.

In furtherance of the scheme to defraud:

MILLS applied for fraudulent loans using multiple businesses, including Kanaka Maoli Hookupu Center ("KMHC"), New Way Horizon Travel ("NWHT"), and Uilani Kawailehua Foundation ("UKF"). These businesses included

ownership information associated with MILLS's family and friends, whose information was part of the false loan applications – at times without their knowledge or authorization. To support the false loan applications, MILLS submitted false and fraudulent IRS Forms 941 listing false employee, payroll, and wage information. MILLS also provided false payroll spreadsheets as part of the loan application. Among other false representations on the applications, MILLS reported false employee and payroll information, false revenue information, and on the PPP loan applications he falsely answered "no" to the question whether the business or business owner had any ownership or common management with any other business. Further, the PPP loan applications included certifications, including about applications for other PPP loans, that MILLS knew were false when he submitted the applications.

As part of this scheme, the defendant received a total of $937,575 from three fraudulent loan applications and one SBA grant. Specifically, on or about May 4, 2020, MILLS applied for a PPP loan for NWHT from Bank A and received $350,000 for the loan on or about May 14, 2020; on or about May 17, 2020, MILLS applied for a PPP loan for KMHC from Bank A and received $475,175 for the loan on or about May 20, 2020; and on or about June 27, 2020, MILLS applied for an EIDL loan and an SBA grant for UKF from the SBA and received $10,000 for the grant on or about June 30, 2020 and $102,400 for the loan on or about July

13, 2020. Bank A was a financial institution as defined by Title 18, United States Code, Section 20. MILLS's scheme to defraud thereby affected a financial institution.

MILLS directed the loan proceeds to be deposited into personal bank accounts controlled by him and/or Person A. Prior to these loan deposits, the bank account balances were only a few hundred dollars or less. Most of the loan proceeds were spent in rapid succession and on items that provided MILLS and his family a personal benefit, such as to pay rent on MILLS's personal residence. Further, within weeks of the fraudulent loan deposits into MILLS and Person A's accounts, MILLS and Person A used the fraudulent loan proceeds to purchase two vacant real property lots located in Keaau, Hawaii.

## THE WIRE COMMUNICATION

On or about May 14, 2020, within the District of Hawaii and elsewhere, and for the purpose of executing the scheme and artifice to defraud, MILLS did knowingly cause to be transmitted by means of wire communication in interstate commerce signals and sounds, namely the transfer of $350,000 for a PPP loan for NWHT from Bank A to MILLS's joint Bank of Hawaii account ending in -5554.

All in violation of Title 18, United States Code, Section 1343.

Forfeiture Notice

1. The allegations contained in the sole count of this Information are incorporated by reference for the purpose of noticing forfeitures pursuant to Title 18, United States Code, Section 982(a)(2)(A) and/or Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. The United States hereby gives notice to CAREY MILLS, the defendant, that, upon conviction of the offense charged in the sole count of this Information, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 982(a)(2)(A) and/or Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), of any and all property, real or personal, that constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 1343, alleged in the sole count of the Information, including:

   a. $69,791.77 seized from Title Guaranty Escrow Services Inc. on or about January 3, 2022, for proceeds of a sale of real property located at 15-1544 15th Avenue, Lot 845, Keaau, Hawaii 96749 (Tax Map Key No.: 3-1-5-42-24).

3. If by any act or omission of the defendant, any of the property subject to forfeiture described in paragraph 2 herein:

   a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty

the United States of America will be entitled to the forfeiture of substitute property up to the value of the property described above in paragraph 2, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and/or Title 28, United States Code, Section 2461(c).

DATED:   May 3, 2022, at Honolulu, Hawaii.

_____
CLARE E. CONNORS
United States Attorney
District of Hawaii

_____
REBECCA A. PERLMUTTER
GREGG PARIS YATES
Assistant United States Attorneys

United States v. Carey Mills
Information
Cr. No. 22-00034 DKW