ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 17 2022

at __10__ o'clock and __55__ min. _a_ M _ay_
CLERK, U.S. District Court

CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

MICHAEL NAMMAR
Deputy Chief, Criminal Division

REBECCA A. PERLMUTTER
GREGG PARIS YATES #8225
Assistant U.S. Attorneys
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Emails:       Rebecca.Perlmutter@usdoj.gov
                    Gregg.Yates@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 22-00034 DKW |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF PLEA |
| | ) | AGREEMENT |
| vs. | ) | |
| | ) | |
| CAREY MILLS, | ) | DATE: May 17, 2022 |
| | ) | TIME: 10:00 a.m. |
| Defendant. | ) | JUDGE: Hon. Derrick K. Watson |
| | ) | |
| | ) | |

## **MEMORANDUM OF PLEA AGREEMENT**

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, CAREY MILLS, and his attorney, Neal

J. Kugiya, Esq., have agreed upon the following:

## THE CHARGES

1.     The defendant acknowledges that he has been charged in an

Information with violating Title 18, United States Code, Section 1343 (wire fraud

affecting a financial institution).

2.     The defendant has read the charge against him contained in the

Information, and that charge has been fully explained to him by his attorney.

3.     The defendant fully understands the nature and elements of the crime

with which he has been charged.

## THE AGREEMENT

4.     The defendant agrees to waive indictment and enter a voluntary plea

of guilty to Information, which charges him with engaging in a fraudulent scheme

to obtain loans guaranteed by the federal government by the use of interstate wires.

The defendant is aware that he has the right to have this felony asserted against

him by way of grand jury indictment.   The defendant hereby waives this right and

consents that this offense may be charged against him by way of the Information.

In return, the United States Attorney's Office for the District of Hawaii agrees not

to file charges against the defendant related to the procurement of government-

2

guaranteed loans through the CARES Act programs and disposition of proceeds for those loans, based on the information now known to the government.   Further, the United States Attorney's Office for the District of Hawaii agrees not to file charges against Person A, who is an individual known to both parties, for conduct related to the charge in the Information against the defendant and any disposition of loan proceeds, based on the information now known to the government.

5.     The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.     The defendant enters this plea because he is in fact guilty of engaging in a fraudulent scheme to obtain loans guaranteed by the federal government by the use of interstate wires as charged in Information, and he agrees that this plea is voluntary and not the result of force or threats.

## PENALTIES

7.     The defendant understands that the penalties for the offense to which he is pleading guilty include:

a.     A term of imprisonment of up to 30 years and a fine of up to $1,000,000, plus a term of supervised release of up to 5 years.

b.     In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty.   The defendant agrees to

3

pay $100 for each count to which he is pleading guilty to the District Court's

Clerk's Office, to be credited to said special assessments, before the

commencement of any portion of sentencing.   The defendant acknowledges that

failure to make such full advance payment in a form and manner acceptable to the

prosecution will allow, though not require, the prosecution to withdraw from this

Agreement at its option.

      c.    **Forfeiture.**  Pursuant to 18 U.S.C. § 982(a)(2)(A) and/or 18

U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461, forfeiture of any property, real or

personal, which constitutes or is derived from proceeds traceable to a violation of

wire fraud affecting a financial institution and/or a specified unlawful activity

within the meaning of 18 U.S.C. § 1956(c)(7) or a conspiracy to commit such

offense.

      d.    **Restitution.**  The Court must also award restitution pursuant to

Title 18, United States Code, Section 3663A, to the persons and entities victimized

by the defendant's offenses.   The defendant understands that the Court will

determine the amounts of restitution to be ordered, as well as the persons and

entities entitled to such restitution, with the assistance of the United States

Probation Office.   The defendant agrees to pay restitution for all losses caused by

the defendant's conduct, regardless of whether the counts of the Information

4

associated with such losses will be dismissed as part of this Agreement.   The

defendant stipulates that the restitution amount is $937,575 to be paid to the

entities to be specified in the restitution order.

## FACTUAL STIPULATIONS

8.     The defendant admits the following facts and agrees that they are not

a detailed recitation, but merely an outline of what happened in relation to the

charge to which the defendant is pleading guilty:

a.     During the COVID-19 pandemic, Congress passed the

Coronavirus Aid, Relief, and Economic Security ("CARES") Act.   As part of the

CARES Act, Congress established the Paycheck Protection Program ("PPP"),

which allowed qualifying small businesses to receive forgivable loans guaranteed

by federal funds for use on specific expenses, including payroll costs, mortgage

interest, rent, and utilities.   The PPP loan program was administered by the U.S.

Small Business Administration (the "SBA").   Certain financial depository

institutions were delegated authority as approved lenders to process PPP loans.

Economic Injury Disaster Loans ("EIDL") were also federal guaranteed loans

administered by the SBA.   Similar to PPP loans, EIDL provided COVID-19

assistance to small businesses affected by COVID-19.

5

b.      To obtain an EIDL or PPP loan, a small business had to submit an application and provide truthful and accurate information that included tax documents submitted to the IRS, and information about the business's employees, ownership, history, and finances, such as revenues, liabilities, and losses due to the pandemic.

c.      From an earlier date, but by in or around May 2020 to August 2020 and thereafter, CAREY MILLS, the defendant, engaged in a knowing and intentional scheme to obtain federal funds through the PPP and EIDL loan programs that the defendant knew he and the various businesses were not entitled to receive.   The defendant took various steps to apply for PPP and EIDL small business loans on behalf of the businesses.   The applications included false and fraudulent representations and information that he knew to be false and fraudulent at the time he submitted the applications.

d.      The defendant applied for fraudulent loans using multiple businesses, including Kanaka Maoli Hookupu Center ("KMHC"), New Way Horizon Travel ("NWHT"), and Uilani Kawailehua Foundation ("UKF").   These businesses included ownership information associated with the defendant's family and friends that were part of the false loan applications, at times without their authorization or knowledge.   To support the false loan applications, the defendant

6

submitted false and fraudulent IRS Forms 941 (Employer's Quarterly Federal Tax Returns) listing false employee, payroll, and wage information.   Defendant also provided false payroll spreadsheets as part of the loan application.   Among other false representations on the applications, the defendant reported false employee and payroll information, false revenue information, and on the PPP loan applications he falsely answered "no" to the question whether the business or business owner had any ownership or common management with any other business.   Further, the PPP loan applications included certifications, including about applications for other PPP loans, that the defendant knew were false when he submitted the applications.

   e.      From the scheme, the defendant received $937,575 for three of his fraudulent loan applications and for one SBA grant.   Specifically, on or about May 4, 2020 the defendant applied for a PPP loan for NWHT from Bank A and received $350,000 for the loan on or about May 14, 2020; on or about May 17, 2020 he applied for a PPP loan for KMHC from Bank A and received $475,175 for the loan on or about May 20, 2020; and on or about June 27, 2020 he applied for an EIDL loan and an SBA grant for UKF from the SBA and received $10,000 for the grant on or about June 30, 2020 and $102,400 for the loan on or about July 13, 2020.   On his applications, the defendant directed the loan proceeds to be

7

deposited into personal bank accounts controlled by him and/or Person A.   Prior to

these loan deposits, the bank account balances were only a few hundred dollars or

less.   Most of the loan proceeds were spent in rapid succession and on items that

provided the defendant and his family a personal benefit.   Further, within weeks

of the fraudulent loan deposits into the defendant and Person A's accounts, the

defendant and Person A used the fraudulent loan proceeds to purchase two real

properties in Keaau, Hawaii.   For example, in June 2020, the defendant and

Person A purchased a property located at 15-1544 15th Avenue, Lot 845, Keaau,

Hawaii 96749, for approximately $41,407.21.

     f.     In furtherance of the scheme to defraud, on or about May 14,

2020, the defendant knowingly caused the interstate wire transmission of $350,000

for a PPP loan for NWHT from Bank A to the defendant's joint Bank of Hawaii

bank account ending in -5554.

     9.     Pursuant to CrimLR 32.1(a) of the Local Rules of the United States

District Court for the District of Hawaii, the parties agree that the charge to which

the defendant is pleading guilty adequately reflects the seriousness of the actual

offense behavior and that accepting this Agreement will not undermine the

statutory purposes of sentencing.

8

## SENTENCING STIPULATIONS

10.     Pursuant to CrimLR 32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

a.     The parties agree that the loss attributable to the defendant, including relevant conduct, is between $550,000 and $1.5 million, pursuant to U.S.S.G. § 2B1.1(b)(1)(H).

b.     The parties make no agreements regarding the appropriate sentence, such that both parties can seek a sentence within or outside of the calculated Guidelines range.

c.     As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.   If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.   *See* U.S.S.G. § 3E1.1(a) and Application Note 3.

9

d.     The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant.   Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b), if the defendant is otherwise eligible.   The defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

11.     The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.   The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

10

12.     The parties represent that as of the date of this agreement there are no material facts in dispute.

### APPEAL/COLLATERAL REVIEW

13.     The defendant is aware that he has the right to appeal his conviction and the sentence imposed.   The defendant knowingly and voluntarily waives the right to appeal, except as indicated in subparagraph "b" below, his conviction and any sentence within the Guidelines range as determined by the Court at the time of sentencing, and any lawful restitution or forfeiture order imposed, or the manner in which the sentence, restitution, or forfeiture order was determined, on any ground whatsoever, in exchange for the concessions made by the prosecution in this Agreement.   The defendant understands that this waiver includes the right to assert any and all legally waivable claims.

a.     The defendant also waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

11

b.     If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

c.     The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

14.     In connection with the collection of restitution or other financial obligations, including forfeiture as set forth below, that may be imposed upon him, the defendant agrees as follows:

a.     The defendant agrees to fully disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including any assets held by a spouse, nominee, or third party.   The defendant understands that the United States Probation Office (USPO) will conduct a presentence investigation that will require the defendant to complete a comprehensive financial statement.   To avoid the requirement of the defendant completing financial statements for both the USPO and the government, the defendant agrees to

12

truthfully complete a financial statement provided to the defendant by the United States Attorney's Office.   The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.   The defendant understands that the USPO will in turn provide a copy of the completed financial statement to the United States Attorney's Office.   The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.   The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

      b.     The defendant expressly authorizes the United States Attorney's Office to obtain his credit report.   The defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days after the date of sentencing.   The defendant also

authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the USPO.

      c.     Prior to sentencing, the defendant agrees to notify the Financial Litigation Unit of the U.S. Attorney's Office before making any transfer of an interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

## FORFEITURE

15.    As part of his acceptance of responsibility and pursuant to 18 U.S.C. § 982(a)(2)(A) and/or 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461, the defendant agrees as follows:

      a.    (1) The defendant consents to the entry of a forfeiture money judgment in the amount of $937,575 in United States currency (the "Forfeiture Money Judgment") and (2) the defendant will forfeit all of his right, title, and interest in the following property (the "Specific Property"):

        i.    $69,791.77 seized from Title Guaranty Escrow Services Inc. on or about January 3, 2022 for proceeds of a sale of real property located at 15-1544 15th Avenue, Lot 845, Keaau, Hawaii 96749 (Tax Map Key No.: 3-1-5-42-24).

14

b.     The defendant acknowledges that the Forfeiture Money Judgment and the Specific Property are subject to forfeiture pursuant to 18 U.S.C. § 982(a)(2)(A) and/or 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461 as property, real or personal, constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of a violation of 18 U.S.C. § 1343 affecting a financial institution and/or traceable to a violation of a specified unlawful activity within the meaning of 18 U.S.C. § 1956(c)(7) or a conspiracy to commit such offense.

c.     The defendant knowingly and voluntarily waives and agrees to waive any and all constitutional, statutory, and other challenges to the forfeiture on any and all grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment.   The defendant waives all constitutional, legal, and equitable defenses to the entry of and collection of the Forfeiture Money Judgment.   The defendant knowingly and voluntarily waives any right to a jury trial on the forfeiture of property.

d.     The defendant agrees to consent promptly upon request to the entry of any orders deemed necessary by the government or the Court to complete the forfeiture and disposition of the property.   The defendant waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure

regarding notice of forfeiture in the charging instrument, announcement of forfeiture at sentencing, and incorporation of the forfeiture in the judgment.   The defendant acknowledges that he understands that the forfeiture of the property, if the government elects to conduct the forfeiture criminally, will be part of the sentence imposed upon the defendant in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure, during the change of plea hearing.   Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, the defendant consents to the preliminary order of forfeiture for the Specific Property and the Forfeiture Money Judgment becoming final as to the defendant when entered.

e.      The defendant agrees to waive all interest in the Specific Property in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal, and to withdraw any claim that the defendant may have filed in such a proceeding.   The defendant further waives any other notice requirement that may apply to the administrative and/or civil forfeiture of the Specific Property.

f.      Any forfeited money and the net proceeds from the sale of the Specific Property will be applied to the Forfeiture Money Judgment in partial satisfaction thereof.   The defendant understands, however, that the forfeiture of

16

the forfeitable property does not constitute and will not be treated as satisfaction, in whole or in part, of any fine, restitution, reimbursement of cost of imprisonment, or any other monetary penalty this Court may impose upon the defendant in addition to the forfeiture.

g.      The defendant represents and agrees that, within the meaning of 21 U.S.C. § 853(p), the Forfeiture Money Judgment amount, $937,575, represents property subject to forfeiture that, as a result of any act or omission of the defendant,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty.

h.      Payment of the Forfeiture Money Judgment shall be made by postal money order, bank check, or certified check payable to the Customs and Border Protection.   On or before the date he enters his plea of guilty pursuant to this agreement, the defendant shall cause said check to be hand-delivered to the Asset Forfeiture Unit, United States Attorney's Office, District of Hawaii, PJKK

17

Federal Building, 300 Ala Moana Boulevard, Room 6-100, Honolulu, Hawaii 96850, with the criminal docket number noted on the face of the check.

       i.    If the Forfeiture Money Judgment is not paid on or before the date the defendant enters his plea of guilty pursuant to this agreement, interest shall accrue at the judgment rate of interest (as defined by 28 U.S.C. § 1961) on any unpaid portion thereof at the judgment rate of interest from that date. Furthermore, if the defendant fails to pay any portion of the Forfeiture Money Judgment on or before the date of his guilty plea, the defendant consents to the forfeiture of any other property alleged to be subject to forfeiture in the Information, including substitute assets, in full or partial satisfaction of the money judgment, and remains responsible for the payment of any deficiency until the Forfeiture Money Judgment, including any accrued interest, is paid in full.

## **IMPOSITION OF SENTENCE**

    16.    The defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines.   The defendant agrees that there is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

18

17.     The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary.   The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charge adequately reflects the seriousness of the actual offense behavior and accepting the Agreement will not undermine the statutory purposes of sentencing.

## **WAIVER OF TRIAL RIGHTS**

18.     The defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     If the defendant persisted in a plea of not guilty to the charges against him, then he would have the right to a public and speedy trial.   The trial could be either a jury trial or a trial by a judge sitting without a jury.   The defendant has a right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

b.     If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual

19

bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

c.   If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

d.   At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant.   The defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.   In turn, the defendant could present witnesses and other evidence on his own behalf.   If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

e.   At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

20

19.    The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.   The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

20.    If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial if the defendant later proceeds to trial.   The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn.   The _only_ exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it. Under those circumstances, the United States may not use those statements of the defendant for any purpose.

21

21.     The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

22.     The defendant and his attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

23.     To become effective, this Agreement must be signed by all signatories listed below.

24.     Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.

AGREED:

CLARE E. CONNORS
United States Attorney
District of Hawaii


_____          Dated:   _May 16, 2022_
MICHAEL NAMMAR
Deputy Chief, Criminal Division

22

REBECCA A. PERLMUTTER
GREGG PARIS YATES
Assistant U.S. Attorneys

Dated: 5/9/22

CAREY MILLS
Defendant

Dated: 05/01/2022

NEAL KUGIYA
Attorney for Defendant

Dated: 5/1/2022

23